RIKER, DANZIG, SCHERER, HYLAND & PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
(973) 538-0800

Attorneys for Plaintiffs
Johnson & Johnson and Cordis Corporation

| | |
|---|---|
| JOHNSON & JOHNSON and CORDIS CORPORATION,<br><br>                                          Plaintiffs,<br><br>vs.<br><br>EV3, INC., RHONDA BARR, ANDREW FITZPATRICK AND BRENDAN McKEEVER,<br><br>                                          Defendants. | UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY<br><br>CIVIL ACTION NO. 09-6306(GEB)<br><br>CIVIL ACTION<br><br>**REPLY CERTIFICATION<br>OF WILLIAM IRBY** |

I, William Irby, of full age, certify as follows:

1. I am the Director of Sales – Cardiology, Southeast Region of Cordis Corporation ("Cordis"). This Reply Certification is submitted in further support of plaintiffs' temporary restraining order and expedited discovery application.

2. I have reviewed Rhonda Barr's and Andrew Fitzpatrick's December 16, 2009 Certifications, and provide the following information to address certain incorrect, incomplete and misleading statements therein.

3. Barr states (¶5) that, at ev3, she "do[es] not market or sell cardiovascular products or target cardiologists or physicians who treat only cardiovascular disease." This statement ignores, however, that at Cordis she called on and developed close relationships with many interventional cardiologists who use both Cardiology and Endovascular products.

Approximately 60-70% of the physicians whom she called on for Cordis were interventional cardiologists who use both Cardiology and Endovascular products. Such cardiologists' practices are not limited to performing cardiovascular (heart) procedures. They also perform endovascular (peripheral) procedures, e.g., surgical procedures in the leg. Therefore, they purchase and use both Cardiology and Endovascular products. Barr also called on and developed close relationships with other customers, such as purchasing agents, hospital administrators and catheterization laboratory nurses and staffs, whose responsibilities include selecting, using, negotiating and/or purchasing both Cardiology and Endovascular products for interventional cardiologists who perform both cardiovascular and endovascular procedures.

4. It is those very interventional cardiologists and other hospital and medical practice employees whom Barr solicited and serviced at Cordis who she is now perfectly positioned to solicit and service on ev3's behalf. Barr still possesses those relationships with those physicians, purchasing agents, hospital administrators and others that she gained as a Sales Representative for Cordis. Those relationships are one of the crucial protectable interests of Cordis that plaintiffs are seeking to protect through the present application and action, and that plaintiffs seek to protect through the Employee Secrecy, Non-Competition and Non-Solicitation Agreements ("Agreements") (specifically, ¶7) that Sales Representatives such as Barr and Fitzpatrick sign with plaintiffs.

5. That Barr does not sell cardiovascular products at ev3 misses the point. Certain ev3 products compete directly with Cordis Endovascular products. Such products include self-expanding and balloon expandable stents (which form a large part of ev3's business), as well as other products such as angioplasty balloons, embolic protection devices and guidewires. At ev3, Barr and the other Individual Defendants are able to use their existing relationships with Cordis

2

customers – interventional cardiologists, purchasing agents, administrators, cath lab staff, etc. – and their personal knowledge of such customers' likes and dislikes, personalities, buying patterns and history, roles and responsibilities within the institution's decision making hierarchy with respect to purchasing, etc., to sell endovascular products that directly compete with Cordis Endovascular products. Plaintiffs respectfully submit that such conduct violates ¶7 of the Agreements.

6. Barr also states (¶14) that, at Cordis, "[m]y customers were those individuals with responsibility for purchasing the cardiovascular products offered by Cordis Cardio." Barr does not address, however, that many of the individuals on whom she called for Cordis were responsible for selecting, using, negotiating and/or purchasing both Cardiology and Endovascular products – not solely Cardiology products. For example, in a hospital's catheterization laboratory, the laboratory manager or purchasing agent typically decides which Cardiology and Endovascular products the hospital will purchase for the laboratory. In other words, there is not one manager or purchasing agent who decides the Cardiology purchases, and another manager or purchasing agent who decides the Endovascular purchases. The laboratory manager or purchasing agent decides as to both Cardiology and Endovascular purchases. For that reason, a Cardiology Sales Representative such as Barr, who developed such close relationships with the individuals who are involved in the purchasing decision, is well-positioned to use those relationships to benefit a new employer such as ev3 for purposes of selling ev3's Endovascular products that compete with Cordis Endovascular products.

7. Barr states (¶15) that she "worked in pharmaceutical sales for several years. Several of the customer relationships I developed as a pharmaceutical sales representative I brought with me when I joined Cordis Cardio." She does not name any such "customer

3

relationships." Nor does she address that (according to her employment application to Cordis) she had worked in pharmaceutical sales for two different companies for a total of only about 18 months, and that before then she had not worked in the medical device industry or the pharmaceutical sales industry. Selling pharmaceuticals to nurse practitioners and physicians is very different from working in a medical device consultative sales role, presenting sophisticated device technologies to physicians, hospital administrators, catheterization laboratory nurses and staff, etc. The latter is the type of selling that Barr performed at Cordis.

8. Barr refers (¶19) to her employment by St. Jude Medical, and that she "marketed and sold to many of the same customers for St. Jude Medical whom I dealt with in my capacity as a sales representative with Cordis Cardio." She does not mention, however, that St. Jude Medical sells products, such as pacemakers, that do not compete with Cordis Cardiology or Endovascular products. In addition, St. Jude pacemakers are used by electrophysiologists, not the interventional cardiologists on whom Barr called for Cordis.

9. Barr states (¶30) that she "was not even aware of all of the Cordis Endo products." This is another carefully-worded statement that is incomplete. Cordis Endovascular offers dozens of products, with thousands of variations in those products based on length, diameter, etc. It would be impossible for her to be aware of "all" such products. She does not address, however, her awareness and knowledge of specific Cordis Endovascular products to which she was exposed during her employment with Cordis. Instead, she states that she was not aware of "all" Cordis Endovascular products. She also states that she "was never asked to, nor did I volunteer, to answer questions regarding Cordis Endo's product line." Are we really to believe that if customers asked Barr how they could purchase or learn more about a Cordis Endovascular product, Barr told the customers that she could not assist them, and did not do

everything that she could to facilitate the sale or potential sale for Cordis? Barr's statement in this regard defies common sense, and her job requirements.

10. Fitzpatrick, who, like Barr, was one of the highest-ranked Cordis Cardiology Sales Representatives, also developed and maintained very close relationships with interventional cardiologists who purchase and use both Cardiology and Endovascular products for the heart and peripheral procedures that they perform. He likewise developed close relationships with other Cordis customers, including purchasing agents, hospital administrators and catheterization laboratory nurses and staff members, whose responsibilities include selecting, using, negotiating and/or purchasing both Cardiology and Endovascular products for interventional cardiologists. Fitzpatrick was employed with Cordis for almost ten years. Like Barr, he was exposed to and received sensitive information of Cordis relating to the Endovascular product line through similar interactions with Endovascular Sales Representatives, national, divisional and other Cordis sales meetings, his participation in the Cordis One and Cordis Unity programs and the like.

11. Fitzpatrick states (¶25) that he "only actively serviced" for Cordis four of his ev3 accounts, but does not explain what he means by "actively serviced." He does not explain why he was not actively servicing all of the accounts that Cordis assigned to him and that Cordis was paying him handsomely to actively service. Nor does he identify all, or even any, of the other accounts that he called on for Cordis that he is still calling on for ev3, despite the non-compete covenant in his Agreement.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

William Irby

Dated: December 21, 2009

4005042.1