RIKER, DANZIG, SCHERER, HYLAND & PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
(973) 538-0800

Attorneys for Plaintiffs
Johnson & Johnson and Cordis Corporation

| | |
|---|---|
| JOHNSON & JOHNSON and CORDIS CORPORATION,<br><br>Plaintiffs,<br><br>vs.<br><br>EV3, INC., RHONDA BARR, ANDREW FITZPATRICK AND BRENDAN McKEEVER,<br><br>Defendants. | UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY<br><br>CIVIL ACTION NO. 09-6306(GEB)<br><br>CIVIL ACTION<br><br>**REPLY CERTIFICATION**<br>**OF BRIAN T. BONACUM** |

I, Brian T. Bonacum, of full age, certify as follows:

1. I am the Division Manager – New York of Cordis Corporation ("Cordis"). This Reply Certification is submitted in further support of plaintiffs' temporary restraining order and expedited discovery application.

2. I have reviewed Brendan McKeever's December 16, 2009 Certification, and provide the following information to address certain incorrect, incomplete and misleading statements therein.

3. McKeever was one of the highest-ranked Cordis Cardiology Sales Representatives in the United States. He developed and maintained very close relationships with interventional cardiologists who purchase and use both Cardiology and Endovascular products for the heart and peripheral procedures that they perform. He developed and maintained close

relationships with other Cordis customers, including purchasing agents, hospital administrators and catheterization laboratory nurses and staff members, whose responsibilities include selecting, using, negotiating and/or purchasing both Cardiology and Endovascular products for interventional cardiologists.

4. Accordingly, it is incomplete to state, as he does in his Certification (¶10), that his "customers were those individuals with responsibility for purchasing the cardiovascular products offered by Cordis Cardio." The Cordis customers on whom he called, and with whom he developed close relationships, not only purchased cardiovascular products, but also endovascular products. The selling of endovascular and cardiovascular products is a relationship-driven business. The relationships with Cordis customers possessed by McKeever constitute important business interests that he developed and maintained for Cordis' benefit and at Cordis' great expense. He is now able to exploit those relationships for ev3's benefit.

5. With Cordis, McKeever not only called on the four hospitals that he identifies in his Certification (¶11), namely Columbia Presbyterian, New York Hospital, Lenox Hill Hospital and New York Queens Hospital, but also another six hospitals in Queens. Those four identified hospitals are "interventional accounts" and purchase endovascular, cardiovascular and core (i.e., all products sold by Cordis Cardio except for cardiac stents) products. The six Queens hospitals are "diagnostic accounts" and purchase endovascular and core products.

6. McKeever states (¶12) that he "never handled the marketing or sale of the products offered through Cordis Endovascular ('Cordis Endo') used to treat endovascular disease." He does not explain, however, that, as any Sales Representative should do, he passed on endovascular sales leads and inquiries to the Endovascular Sales Representative in the

territory when he received any such leads or inquiries, which provided him with knowledge of potential endovascular business in the territory.

7. McKeever states (¶16) that he "never had any knowledge of Cordis Endo's pipeline products, research and development." At the same time, he admits (¶20) that he attended Cordis national sales meetings, at which sensitive information such as Cordis Endovascular sales results was discussed: "The only presentations I recall involving Cordis Endo were national sales meetings where the sales results of both Cordis Cardio and Cordis Endo were discussed." At those national sales meetings, which McKeever admits attending, Cordis Endo and Cordis Cardio managers made general session presentations to the assembled Cardio and Endo managers and sales representatives concerning both Endo and Cardio products in the pipeline, and such products' release dates and strategic plans.

8. McKeever states (¶17) that he "never used any knowledge about Cordis Endo's sales or marketing strategies as part of my sales efforts for either Cordis Endo or ev3." He fails to acknowledge, however, that Cordis customers in his territory participated in joint Cardiology / Endovascular marketing programs such as the "Cordis ONE" program and the "Cordis Unity Program," or "CUP," program. By providing rebates, those programs incentivized Cordis customers to achieve or maintain certain purchasing goals in combined Endo and Cardio purchases. The customers needed to achieve or maintain such goals in both Endo and Cardio to receive certain rebates. McKeever was responsible for performing monthly business reviews with the accounts in his territory that participated in these programs to evaluate the accounts' level of achievement as to the targeted Endo and Cardio purchases. McKeever also received status reports showing the purchasing levels for Endo and Cardio products of the accounts in his territory participating in these programs.

9. Accordingly, the Cordis One and Cordis Unity programs comprised other means by which McKeever received sensitive, proprietary information concerning the business of Cordis Endovascular. They also constituted vehicles through which McKeever gained knowledge of Cordis Endo "target clients," contrary to his disavowal of any such information in his Certification (¶19).

10. In or about mid December 2009, McKeever told me that he had been "in a case" for ev3 at Lenox Hill Hospital. I told him that such conduct was a direct violation of his non-compete agreement. He also states in his Certification (¶26) that Lenox Hill Hospital is one of his accounts at ev3. Lenox Hill Hospital is one of the most significant, lucrative and prestigious accounts in the United States. A former Cordis Sales Representative's close relationship, developed for Cordis' benefit and at great expense to Cordis, with such a client as Lenox Hill Hospital is a prime example of the type of customer relationship that plaintiffs seek to protect through the Employee Secrecy, Non-Competition and Non-Solicitation Agreements that they enter into with Sales Representatives such as McKeever. He is perfectly positioned to exploit and trade on that relationship for ev3's benefit, and it appears by his own admission that he has already done so.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

_____
Brian T. Bonacum

Dated: December 21, 2009

4005558.1